

NUMBER 13-15-00504-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RESIDENTIAL CREDIT SOLUTIONS, INC. AND
FEDERAL NATIONAL MORTGAGE ASSOCIATION,  Appellants,

v.

JOE PADILLA,  Appellee.

**On appeal from the 404th District Court
of Cameron County, Texas.**

# ORDER ABATING APPEAL AND
# REFERRING CASE TO MEDIATION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Order Per Curiam**

Appellee Joe Padilla filed suit against appellants Residential Credit Solutions, Inc.

(RCS) and Federal National Mortgage Association (Fannie Mae), complaining of the

foreclosure of the mortgage on his home. The evidence before the trial court reveals

that on May 31, 2007, Padilla signed an Adjustable Rate Note (the Note) in the original principal amount of $344,000. The Note originated with First Franklin Financial Corporation, an Operating Subsidiary of Merrill Lynch Bank & Trust Co., FSB (First Franklin).[1] It called for an initial interest rate of 8.99 percent per annum and initial monthly payments of $2,765.43, beginning July 1, 2007 and maturing on June 1, 2037. The Note provided for a fluctuating rate of interest that could change the monthly payment.

In connection with the Note, Padilla signed a Deed of Trust, pledging real property commonly known as 118 E. San Jose Road, Bayview, Texas 78566 (the Bayview Property) as collateral for payment of the Note.[2] The Deed of Trust allowed for foreclosure of the Bayview Property upon Padilla's default.

Trial testimony and exhibits also show that in April of 2009, Padilla executed a Loan Modification Agreement with First Franklin. The Loan Modification Agreement adjusted the principal balance of the loan upward to $360,420.04.[3] It also reduced the

---

[1] Although Padilla sued First Franklin Financial Corporation, an Operating Subsidiary of Merrill Lynch Bank & Trust Co., FSB (First Franklin), First Franklin did not participate at trial and is not a party to this appeal. At all relevant times, Residential Credit Solutions, Inc. (RCS) was the mortgage servicer of the mortgagee of the Deed of Trust at issue in this case. RCS, a loan servicing company, became the holder of the Note and the associated Deed of Trust on April 11, 2014 when First Franklin assigned the Note and transferred all liens to RCS.

[2] Tina Snyder also signed the Note and the Deed of Trust as a borrower. But Snyder is not a party to this litigation.

[3] The new principal balance included the following:

| | |
|---|---|
| Principal: | $340,170.58 |
| Interest through 04/30/2009: | $10,183.97 |
| Escrow Shortage: | $10,065.49 |
| Less Mortgagor Contribution: | ($0.00) |
| Less Suspense: | ($0.00) |
| | $360,420.04 |

interest rate on the Note to a fixed rate of 4.87 percent, reduced the monthly principal and interest payment on the Note to $1,708.20, and extended the maturity of the Note through May 1, 2049.   Finally, the Loan Modification Agreement set out that Padilla agreed "that the establishment and maintenance of an escrow account for the payment of taxes is required for the remaining life of the loan."

The last monthly payment made by Padilla to RCS was on or about August 1, 2011.   On February 16, 2012, RCS sent a notice-of-default and intent-to-accelerate letter to Padilla.   The letter set out that the total amount due was $19,335.59 and informed Padilla that if this amount, together with additional payments that come due, was "not cured by 03/17/2012, RCS intend[ed] to accelerate the sums evidenced by the Note and [Deed of Trust]."   Further, as required by section 22 of the Deed of Trust, the letter provided that Padilla could dispute the delinquency or calculation of amount due by contacting RCS and that he could "bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale."   It is undisputed that Padilla made partial payments of $4,500 and $2,400 and that RCS returned those partial payments as insufficient to pay the outstanding balance.

On April 2, 2012, RCS accelerated the maturity of the Note by written notice of acceleration, which enclosed a notice of the substitute trustee's sale.   Fannie Mae purchased the Bayview Property at a foreclosure sale on May 1, 2012.

Padilla sued RCS and Fannie Mae for common law fraud, negligent misrepresentation, and breach of contract.   Among other things, Padilla asserted that First Franklin had misrepresented the terms of both the original Note and the Loan Modification Agreement.   Padilla claimed that before entering each agreement, First

3

Franklin led him to believe that the terms of the respective agreement would only require him to make a monthly payment of roughly $1,700 per month rather than the much higher payment actually required under the instruments. Padilla further contended that the foreclosure of the Bayview Property was a "direct consequence of the fraud and misrepresentations perpetrated upon [Padilla] by . . . First Franklin." As to RCS and Fannie Mae, Padilla asserted that they were "well aware" of First Franklin's fraudulent acts. Padilla further asserted that his "good faith efforts to make his residential home mortgage payments [of $4,500 and $2,400] were unilaterally rejected by [RSC] without any indication as . . . the amount needed to 'bring [the] account current.'" Finally, Padilla sought a judgment declaring "that the mortgage instruments, including the note and deed of trust, are not valid legal instruments which entitle Defendant to a lien in the subject real property." Padilla requested the following remedies, some of which were included in his second amended petition and others which were requested at trial, without objection: (1) a temporary restraining order and a temporary injunction; (2) that the foreclosure be set aside and the note and deed of trust be reinstated with the principal and interest amount as $353,000, an interest rate of 4.875 percent, and a principal and interest monthly payment of $1,708.20 for thirty years; (3) attorney's fees of $20,000.00; (4) exemplary damages of $100,000.00; and (5) actual damages of $58,707.50, which arguably represents the difference between what Padilla should have paid and what he actually paid.[4]

---

[4] In the alternative, Padilla asked for (1) an award of $117,000 in actual damages, which is the arguably the equity in his house (FMV of $500,000 minus the mortgage balance of $383,000); (2) attorney's fees of $20,000; and (3) exemplary damages of $100,000. Another alternative suggested by Padilla was actual damages of $470,000, which represents $140,000 in payments, his $80,000 down payment, and $250,000 for improvements made to the Bayview Property.

On July 21, 2015, after a bench trial, the trial court entered judgment in favor of Padilla without stating the basis. It set aside the May 2, 2012 foreclosure of Padilla's Bayview Property, waived any past or present default under the terms of the Note, any modifications, and the Deed of Trust, and withdrew the Substitute Trustee's Deed. In addition, the judgment set out the following terms of the Note and Loan Modification Agreement: (1) a principal balance of $318,000, which allowed for the $35,000 paid by Padilla into the registry of the trial court,[5] a fixed annual interest rate of 4.875 percent, a term of thirty years from the date of the judgment, and a monthly principal and interest payment of $1,868.11; (2) Padilla to timely pay insurance premiums and taxes, and RCS not to maintain an escrow account[6]; and (3) RCS and Fannie Mae to pay Padilla's costs and $5,000 of his attorney's fees. The judgment awarded no actual damages or exemplary damages.

RCS and Fannie Mae appeal from this judgment. By three issues, RCS and Fannie Mae argue that the trial court erred in: (1) excusing Padilla's default; (2) rescinding the foreclosure; and (3) modifying the terms of the loan documents.

The Court has determined that this appeal should be referred to mediation. Accordingly, it is ORDERED that this appeal be ABATED and the issues in this appeal be mediated under the following terms and conditions:

1. The parties must promptly agree upon a mediator and, within seven days of this Order, notify the Court in writing of the name and address of the mediator selected. If the parties are unable to agree upon a mediator, they must so notify the Court within the seven day period and the Court will act accordingly within its discretion.

---

[5] After the foreclosure of the Bayview Property but prior to trial, Padilla made payments of approximately $35,000 into the trial court's registry.

[6] The trial court ordered Padilla to pay the monthly installment payments into the registry of the trial court during the course of any appeal, until further order of that court.

5

2. All parties must confer with their mediator within seven days of the date of this Order, or in the case of a court appointed mediator, within seven days of the appointment of the mediator, to establish a date and place for the mediation. The parties shall agree on a date for the mediation that is consistent with the mediator's schedule and is no later than thirty days after the date of this Order. In the event the parties cannot agree on a date, the mediator shall select and set a date. The mediator shall notify the Court of the date selected for the mediation.

3. In the discretion of the mediator, each party may be required to provide a confidential memorandum and/or information sheet setting forth the issues of the case and their positions on these issues. Additionally, upon request of the mediator, the parties shall produce all information the mediator deems necessary to understand the issues of the case. The memorandum and/or information sheet and other information produced to the mediator will not be made a part of the file in this case and will be destroyed by the mediator at the conclusion of the mediation proceeding.

4. All parties to this matter or their authorized representatives, accompanied by their counsel, must appear and attend the mediation proceeding. The mediation shall be for a full day.

5. Mediation is a mandatory, non-binding settlement conference conducted with the assistance of a mediator. The mediation proceeding will be confidential within the meaning of the Texas Civil Practice and Remedies Code sections 154.053 and 154.073. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 154.053, 154.073 (West, Westlaw through 2015 R.S.).

6. Unless otherwise agreed, the mediation proceeding will not be recorded.

7. The mediator will negotiate a reasonable fee with the parties. The mediator's fee will be borne equally by the parties unless otherwise agreed by the parties, and will be paid directly to the mediator. If the parties do not agree upon the fee requested by the mediator, the Court will set a reasonable fee, which shall be taxed as costs. *See id.* § 154.054 (West, Westlaw through 2015 R.S.).

8. Within two days after the conclusion of the mediation, the mediator shall certify to this Court as follows: (a) whether the parties appeared as ordered, (b) whether the case settled, and (c) whether

6

the mediation fees were paid in accordance with the court's order or as otherwise agreed by the parties.

9.       If mediation fully resolves the issues in this case, the parties must file a joint or agreed motion with this Court seeking dispositive relief within seven days of the conclusion of the mediation. If the parties need more time to effectuate the terms of the settlement agreement, they must, within seven days of the conclusion of mediation, file a joint or agreed motion for an extension of time to file their disposition motion.

It is FURTHER ORDERED that this case is ABATED pending this Court's review

of the mediator's report and further order of this Court.

IT IS SO ORDERED.

PER CURIAM

Delivered and filed the
18th day of November, 2016.